UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NORMA OROZCO,** | **CASE NO. 1:20-CV-1290 AWI EPG** |
| **Plaintiff** | **ORDER ON MOTIONS AND COMPELING ARBITRATION** |
| v. | |
| **GRUMA CORPORATION, a Nevada corporation; and DOES 1 to 10,** | **(Docs. 5, 19, and 20)** |
| **Defendants** | |

## I. Background

Defendant Gruma Corporation produces and distributes tortillas, tortilla chips, and flour in the United States through its Mission, Guerrero, and Calidad brands. It has production and packaging plants in 12 states. Plaintiff Norma Orozco worked at Defendant's plant in Fresno, CA from June 2004 to July 13, 2018, on an assembly line packaging tortillas. While working for Gruma, Orozco was asked to sign binding arbitration agreements that are governed by the Federal Arbitration Act ("FAA") in 2011 and 2016. At issue in this motion is the arbitration agreement signed on December 21, 2016 ("2016 Agreement").

Orozco filed suit against Gruma in June 2020 in California state court, alleging violations of California labor laws, making claims based on overtime, meal period, rest period, minimum wage, wage statement, waiting time, Private Attorney General Act ("PAGA"), and unfair competition laws. Gruma removed the case to federal court. Gruma has made a motion to compel arbitration and to dismiss this case based on the 2016 Agreement. Doc. 5. Orozco opposes the motion. Doc. 8. As part of the briefing, both parties declarations and made multiple objections to

the other side's proffer of evidence. To allow for a fuller exploration of the motion, both parties were granted permission to submit additional declarations and objections to evidence. Doc. 15. Gruma submitted additional declaration and objections while Orozco submitted additional objects to evidence. The parties then also made requests for sanctions/admonishment.

## II. Legal Standard

The Federal Arbitration Act states that any agreement within its scope "shall be valid, irrevocable, and enforceable," and permits a party "aggrieved by the alleged…refusal to arbitrate" to petition any federal district court for an order compelling arbitration. 9 U.S.C. § 4; Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000). A district court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Revitch v. DIRECTV, LLC, 977 F.3d 713, 716 (9th Cir. 2020). If the answer to both questions is "yes," the district court must enforce the arbitration agreement in accordance with its terms; there is no place for discretion by the district court. Id. at 716. Thus, "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." Granite Rock Co. v. International Bhd. Of Teamsters, 561 U.S. 287, 299 (2010).

"To determine whether the parties agreed to arbitrate, courts apply ordinary state-law contract principles." B.F. v. Amazon, 2019 U.S. Dist. LEXIS 230144, at *11 (W.D. Wash. Oct. 21, 2019), citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). While generally applicable defenses to contract enforcement, such as fraud, duress, or unconscionability, may invalidate arbitration agreements, the FAA preempts state law defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). There is generally a strong policy favoring arbitration, which requires any doubts to be resolved in favor of the party moving to compel arbitration. Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25

(1983). However, where a party challenges the existence of an arbitration agreement, "the presumption in favor of arbitrability does not apply." Goldman, Sachs & Co. v. City of Reno, 747 F.3d 733, 742 (9th Cir. 2014).

### III. Discussion

Gruma has provided a signed copy of the 2016 Agreement which does state "9. This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and any applicable state law" which does specify that "any claim, dispute, or controversy between Employee and Company…must be resolved by final and binding arbitration." Doc. 1-1, Ex. B. Orozco makes several arguments against the enforcement of the 2016 Agreement: it is invalid because Gruma did not present any prima facie evidence of its existence, there was no mutual assent, it is not covered by the FAA and does not encompass California Labor Code claims, and unconscionability. Doc. 8, 1:13-28.

**A. Authentication**

First, Orozco argues that "Gruma does not present any evidence to establish a prima facie case that an agreement to arbitrate exists. Instead Gruma inappropriately submits their counsel's declaration - riddled with hearsay statements - as purported evidence of the existence of the contract." Doc. 8, 6:20-23. The document Gruma submits as the signed English version of the 2016 Agreement is attached to the declaration of Corey Cabral. Doc. 5-1, pages 13-14 of 22. But, it is also attached to a declaration of Horacio Gaitan, Vice President of Human Resources for Gruma, that was filed in support of the notice of removal. Doc. 1-1, Ex. B.

"In order to authenticate a potential piece of evidence, Federal Rule of Evidence 901(a) requires the proponent to 'produce evidence sufficient to support a finding that the item is what the proponent claims it is.' The authentication requirement may be satisfied by the testimony of a witness with knowledge that an item is what it is claimed to be. For example, a person who has knowledge of a record system may authenticate a particular record from the system as evidence." Izett v. Crown Asset Mgmt., LLC, 2019 U.S. Dist. LEXIS 170548, at *7-8 (N.D. Cal. Oct. 1,

2019), citing Fed. R. Evid. § 901(a) and (b)(1). Additionally, an item can be authenticated by "The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. § 901(b)(4).

Gaitan states that "As part of my job responsibilities, I am familiar with the business records maintained by Gruma in the normal course of business with regard to human resources matters, including names, home addresses, dates of employment, employment history, timekeeping records, and compensation of employees, including Norma Orozco….Based on my review of Ms. Orozco's personnel file, on December 21, 2016, Ms. Orozco signed a written agreement specifying that any disputes arising between herself and Gruma must be resolved by final and binding arbitration. A true and correct copy of the Arbitration Agreement Ms. Orozco signed in 2016, which is maintained in Ms. Orozco's personnel file, is attached…" Doc. 1-1, 2:21-3:4. The document is entitled "Arbitration Agreement" and signed by both Plaintiff Norma Orozco (she dated her signature December 21, 2016) and Horacio Gaitan. Doc. 1-1, Ex. B. Orozco's own declaration does state that, with reference to the English version of the 2016 Agreement, "I signed the form without reading anything." Doc. 8-1, 3:15-16. Additionally, aside from pointing out the lack of authentication, Orozco makes no substantive challenge that the document is a forgery or doctored in any way; she does not make any affirmative statement that the document is not the English version of the 2016 Agreement. See Doc. 8. Where there is indicia that a contract is what it purports to be and the party challenging foundation does not make any substantive challenge, the document may be considered authenticated. See <u>Safley v. BMW of N. Am., LLC</u>, 2021 U.S. Dist. LEXIS 22577, at *7 (S.D. Cal. Feb. 5, 2021) (overruling an objection to authentication where "Plaintiffs do not submit evidence contesting the authenticity of the document before the Court. Plaintiff Clarence Safley states that he 'did not prepare this contract' and 'was not given an option to sign a contract without miscellaneous provisions,' but he does not claim the signature on the Sale Contract is not his.").

**B. Mutual Consent**

"California law is clear that there is no contract until there has been a meeting of the minds

on all material points." Banner Entm't, Inc. v. Superior Court, 62 Cal. App. 4th 348, 357-58 (Cal. App. 2nd Dist. 1998). Orozco argues that the circumstances of signing the 2016 Agreement are such that there was no consent on her part. Orozco argues that she did not "receive[] consideration or anything of value in return for her alleged acknowledgement" and that "she did not know she signed a contract." Doc. 8, 7:4-7.

In her declaration, Orozco states

> 20. Corvero [the Gruma representative] pulled out a form [Arbitration Agreement] and told us to sign it. The form was in English only. Again I speak, read and write in Spanish only. We asked for a Spanish version, and Corvero refused to give us one. Corvero told us to just sign it, and that if we don't sign it, we would be 'jobless.'
>
> ….
>
> 23. Gruma did not give me an opportunity to read the form. I signed the form without reading anything. I was neither told now was I aware that it represented that I was agreeing to arbitration. Also, I was neither told nor was I aware that by signing the form I would ultimately be waiving my right to a jury trial.
>
> 24. I did not believe the form was a contract because I had no opportunity to negotiate the terms of the agreement or given a choice not to sign it. I was not provided with a copy of the rules that govern the arbitration before signing the form, nor was it suggested that I discuss the terms with a lawyer.
>
> 25. I understood that signing the agreement was a condition of employment with Gruma.

Doc. 8-1, 3:9-24. Fraud in the inception prevents the formation of a contract since "'the fraud goes to the inception or execution of the agreement, so that the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all, mutual assent is lacking, and [the contract] is void." Rosenthal v. Great W. Fin. Sec. Corp., 14 Cal. 4th 394, 415 (Cal. 1996), quoting Ford v. Shearson Lehman American Express, Inc., 180 Cal. App. 3d 1011, 1028 (Cal. App. 2nd Dist. 1986).

In this case, there is an evidentiary problem. To support a motion, a party may provide "the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:…(2) If executed within the United States…'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)'." 28

U.S.C. § 1746. "Because of this explicit provision in the statute, a declaration without a date may be excluded. Courts have permitted undated affidavits to be used under certain conditions— for example, where extrinsic evidence indicates the date of the signing or where a replacement verification is submitted with a date added." Grand Fabrics Int'l v. Melrose Textile, 2018 U.S. Dist. LEXIS 228103, at *20-21 (C.D. Cal. May 9, 2018), citations omitted; see also Jones v. Pruette, 2017 U.S. Dist. LEXIS 156854, at *7 (C.D. Cal. July 11, 2017). The equivalent California law similarly requires "the unsworn statement, declaration, verification, or certificate, in writing of such person which recites that it is certified or declared by him or her to be true under penalty of perjury, is subscribed by him or her, and (1), if executed within this state, states the date and place of execution, or (2), if executed at any place, within or without this state, states the date of execution and that it is so certified or declared under the laws of the State of California." Cal. Civ. Proc. Code § 2015.5.

      Plaintiff Norma Orozco's declaration lacks a date. Doc 8-1. This failing was among the objections Gruma made to consideration of Orozco's declaration. Doc. 11, 3:12-28. Both parties were then given the opportunity to provide additional or supplemental declarations to resolve any evidentiary problems. The order specifically stated "Both parties have made objections to the other side's declarations on a variety of bases. Given that evidence will be determinative in this motion, this court will allow both sides to file additional declarations. In particular, the declaration of Plaintiff Norma Orozco is key." Doc. 15, 1:13-15. Orozco did not correct the problem with her declaration. Thus, it cannot be considered.

      Gruma provides a number of declarations to support its argument. In key part, the Patrick Lopez states that he was the Gruma representative who met with Orozco on December 20, 2016 and describes the meeting as follows:

> 8. I have reviewed the Declaration of Myriam Mota dated August 3, 2021 and the exhibits which I recognize from my employment at Gruma. Exhibits A and B attached to Ms. Mota's declaration confirm that Norma Orozco worked the "second shift" in the Flour Department and that she clocked in on December 20, 2016 at 1:44 p.m. in time for my meeting with her and her department in a large conference room. There were approximately 25-30 members of the Flour Department present, including Ms. Orozco. Before I began the presentation, I distributed copies of the Spanish-language and English-language arbitration agreement to Ms. Orozco and the other Flour Department employees so that they could follow my presentation. I

started out by asking, in English, if there were English speakers who wished to have the presentation in English. No one responded. So, I explained, in Spanish, that most employees had entered into arbitration agreements with Gruma previously and that Gruma wished to enter into a new and updated arbitration agreement due to evolving laws. In Spanish, I told Ms. Orozco and the other Flour Department employees that the proposed agreement would replace prior arbitration agreements and that entering into the agreement would create an alternative method of dispute resolution to resolve any disputes that Gruma had with them or that they had with Gruma that would be binding on the employee and on Gruma. I stated, in Spanish, that the arbitration process provides for submission of disputes to a professional, neutral person from outside of Gruma, for a decision that will be binding on the employee and Gruma. I told Ms. Orozco and the other Flour Department employees, in Spanish, that the arbitration agreement would replace the existing arbitration agreement that they were working under. I told Ms. Orozco and the other Flour Department employees, in Spanish, that if there was an arbitration that the employees would have the right to counsel of their choice and that Gruma would pay for the arbitrator's expenses and fees in excess of court fees in any arbitration. I told Ms. Orozco and the other Flour Department employees, in Spanish, that by entering into the agreement they would agree to waive the right to a jury trial and that any claims must be brought on an individual basis and that they waived participating in any class action. In Spanish, I told Ms. Orozco and the other employees that they could take a copy of the arbitration agreement with them and have it reviewed by a lawyer. I told Ms. Orozco and the other employees, in Spanish, that once they signed the agreement, they had 30 days in which they could opt out of the arbitration agreement. I explained, in Spanish, that continuing employment at Gruma was consideration in exchange for their agreement to arbitrate disputes with Gruma under the new agreement. Attached as Exhibit E is a true and correct copy of the Spanish language copy of the agreement that was provided to Ms. Orozco and the other Flour Department employees at the meeting on December 20, 2016. I also told the Flour Department employees, in Spanish, that I had copies of the JAMS Employment Arbitration Rules, both Spanish-language and English-language, with me and that they could review a copy of the rules or get a copy from the HR Department. Further, I answered all questions to the best of my ability raised by the Flour Department employees to further explain the arbitration agreement. And, in Spanish, I told Ms. Orozco and the other Flour Department employees that if they needed further legal advice that they could take a copy of the arbitration agreement to a lawyer. I asked all of the Flour Department employees, in Spanish, to review and, if they agreed, to return a signed copy of the arbitration agreement to me before I left Fresno. The presentation and follow up question and answer portion lasted, approximately, 20 minutes.

9. Ms. Orozco signed the Arbitration Agreement the following day, on December 21, 2016, and turned it in to me before I left Fresno. I had previously explained to her that the new arbitration agreement would not be effective until thirty days after she signed it and only if she did not opt out by returning an "Arbitration Agreement Election Form". Ms. Orozco did not return an Arbitration Agreement Election Form to opt out of the arbitration agreement or take any other action to opt out of the Arbitration Agreement.

Doc. 17, 3:2-4:21. Gruma's other declarations from Horacio Gaitan and Myriam Mota provide support for the assertion that both Lopez and Orozco were present at this meeting. See Docs. 9-2 and 16. Lopez's declaration must be given weight in this case.

In this case, Orozco did receive consideration in the contract. The promise of continued

employment does qualify as consideration. Asmus v. Pac. Bell, 23 Cal. 4th 1, 15 (Cal. 2000) ("a rule requiring separate consideration in addition to continued employment as a limitation on the ability to terminate or modify an employee security agreement would contradict the general principle that the law will not concern itself with the adequacy of consideration."). Based on the declaration of Patrick Lopez, Orozco did know that she was entering into an arbitration agreement with binding consequences. There was mutual assent to the 2016 Agreement.

**C. Unconscionability**

Orozco argues that the 2016 Agreement cannot be enforced because it is unconscionable. Under California law, a delegation clause must be both procedurally and substantively unconscionable in order to be found invalid, though the agreements are evaluated on a sliding scale, which disregards the need to show procedural unconscionability in proportion to the harshness of the substantive terms. Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal. 4th 83, 114, 99 Cal. Rptr. 2d 745, 6 P.3d 669 (2000). Whether a contract is unconscionable is a question of law. Patterson v. ITT Consumer Fin. Corp., 14 Cal. App. 4th 1659, 1663 (Cal. Ct. App. 1993). In California, unconscionability includes an "absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." Lhotka v. Geographic Expeditions, Inc., 181 Cal. App. 4th 816, 821 (Cal. Ct. App. 2010) (citation omitted). Accordingly, unconscionability has both a "procedural" and a "substantive" element. Id.

Orozco argues there was procedural unconscionability because the 2016 Agreement was only given to her in English when Gruma knew she did not read English, she was threatened with job loss if she did not sign the document, and that she was not provided with the arbitration rules. Doc. 8, 11:18-13:12. The declaration of Lopez supports the conclusion that she was given a Spanish language version of the 2016 Agreement and that she was provided access to the arbitration rules. Doc. 17, 3:7-8 and 4:6-8. The declaration is ambiguous about the consequence of not agreeing to the 2016 Agreement. He did state "I explained, in Spanish, that continuing employment at Gruma was consideration in exchange for their agreement to arbitrate disputes with

1 Gruma under the new agreement." Doc. 17. 4:2-4. This could be interpreted as a threat to fire
2 employees that did not agree to sign but the language is ambiguous. Cf. Circuit City Stores, Inc. v.
3 Mantor, 335 F.3d 1101, 1106-07 (9th Cir. 2003) ("In light of Circuit City's insistence that Mantor
4 sign the arbitration agreement -- under pain of forfeiting his future with the company -- the fact
5 that in 1995 Mantor was presented with an opt-out form does not save the agreement from being
6 oppressive, for Mantor had no meaningful choice, nor any legitimate opportunity, to negotiate or
7 reject the terms of the arbitration agreement.").

8 Even if Lopez's declaration could be considered a weak form of procedural
9 unconscionability, there is not substantive unconscionability in this case. "[A] showing of both
10 procedural and substantive unconscionability is required to render a contract unenforceable, a
11 contract that is not substantively unconscionable is fully enforceable regardless of procedural
12 unconscionability." Sanchez v. Valencia Holding Co., LLC, 61 Cal. 4th 899, 928-29 (Cal. 2015),
13 Chin concurrence and dissent. Orozco argues the 2016 Agreement is "substantively
14 unconscionable, and hence, unenforceable, because 1) the agreement does not permit judicial
15 review of the arbitrator's decisions; and 2) the agreement unlawfully compels the waiver of a
16 PAGA representative claims." Doc. 8, 13:14-16.

17 First, the FAA does allow for limited judicial review of arbitration decisions for the
18 reasons stated in 9 U.S.C. §§ 10 and 11. Orozco bases her argument on this point solely on the
19 California Supreme Court decision in Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal.
20 4th 83 (Cal. 2000). The Armendariz court found that "a written decision that will permit a limited
21 form of judicial review" was required. Id. at 91. Significantly, Armendariz was dealing with a
22 motion to compel arbitration, like the case at hand. The California Supreme Court stated that "the
23 employees' claim that they are unable to vindicate their FEHA rights because of inadequate
24 judicial review of an arbitration award is premature." Id. at 107. The 2016 Agreement includes
25 the provision "Awards must include the arbitrator's written and reasoned opinion including the
26 arbitrator's essential findings of fact and conclusions of law on which the award is based and will
27 be subject to confirmation, correction, or vacation in accordance with applicable state law." Doc.
28 1-1, Ex. B, ¶ 4. This language satisfies the standard set out in Armendariz for an enforceable

arbitration clause.  The Central District found no unconscionability where the arbitration clause stated "The arbitrator's award will not be subject to review or appeal, except as provided by the Federal Arbitration Act, 9 U.S.C. Sections 1-14, or by the applicable state arbitration statute." Asher v. E! Entm't TV, LLC, 2017 U.S. Dist. LEXIS 131579, at *24 (C.D. Cal. Aug. 16, 2017). In another case from the California courts, there was no substantive unconscionability where "the agreement is silent on the issue of judicial review….[and states] that the arbitration shall be conducted 'pursuant to the provisions of the [FAA] and to state law to the extent state law would otherwise be applicable...'" Ramos v. Fry's Elecs., Inc., 2014 Cal. App. Unpub. LEXIS 8210, at *37 (Cal. App. 2nd Dist. Nov. 17, 2014).  Indeed, in another opinion from the Eastern District, an arbitration clause's silence on the availability of appeal does not establish unconscionability because "an arbitration agreement does not have to explicitly provide for judicial review for judicial review to be available" under federal and state law. Ortiz v. Hobby Lobby Stores, Inc., 52 F. Supp. 3d 1070, 1079 (E.D. Cal. 2014), citations omitted.

  Second, regarding waiver of PAGA representative claims, the California Supreme Court has stated "where, as here, an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law….We conclude that the rule against PAGA waivers does not frustrate the FAA's objectives because, as explained below, the FAA aims to ensure an efficient forum for the resolution of private disputes, whereas a PAGA action is a dispute between an employer and the state Agency." Iskanian v. CLS Transp. L.A., LLC, 59 Cal. 4th 348, 384 (Cal. 2014).  However, the U.S. Supreme Court has stated "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 341 (2011).  In the Eastern District, the court has examined this apparent conflict, surveyed the extant precedent, and concluded that the majority of California Federal District Courts have found "the FAA preempts the rule announced in Iskanian….[the] undisputed waiver of the right to bring a representative or class action is enforceable." Porter v. Nabors Drilling United States, 2015 U.S. Dist. LEXIS 189871, at *3 (E.D. Cal. Sep. 18, 2015). Waiver of PAGA representative claims is not substantively unconscionable.

Since there is no substantive unconscionability, there is no bar to enforcement under California law.

**D. Interstate Commerce Requirement**

Orozco argues that "Gruma's employment arbitration agreement does not involve interstate commerce." Doc. 8, 9:12-13. The FAA is limited to a "maritime transaction or a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. "We have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' -- words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. Because the statute provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause,' it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce' -- that is, 'within the flow of interstate commerce'….Congress Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'" Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56-57 (2003), citations omitted. Part of the Commerce Clause permits the federal regulation of "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities," more simply stated as "the interstate transportation of a commodity through the channels of commerce." United States v. Lopez, 514 U.S. 549, 558-559 (1995), citations omitted. Significantly, where "the parties assenting to this contract are of diverse citizenship, their contract necessarily 'involve[es] interstate commerce.'" Richard Barrie & Alba Fisheries v. Nfh Or., 2020 U.S. Dist. LEXIS 253132, at *9 (D. Or. Nov. 4, 2020).

In this case, Orozco is a citizen of California and Gruma, as a corporation, is a citizen of Nevada and Texas; this case was removed to federal court in part on the basis of diversity jurisdiction. Doc. 1, 4:8-9 and 5:2-11. Additionally, Gruma has provided the declaration of Ron Anderson, Vice President of Retail Sales, who states that "Since at least 2011, many of the food products manufactured in the Fresno facility were manufactured with ingredients and other

1  materials from sources outside of California, including corn flour from Texas and from Mexico,
2  and packaging material from New York, Ohio, and Texas. Further, since at least 2017, food
3  products manufactured in the Fresno facility have been regularly shipped to destinations outside of
4  California, including Nevada, Utah, Arizona, Montana, Wyoming, Washington, Oregon, Idaho,
5  and other states." Doc. 10-3, 1:11-17. Orozco was employed in the manufacture of Gruma
6  products which contained materials that crossed state lines and which were then sold across state
7  lines. Involvement in commercial purchases and sales across state lines satisfies the "involving
8  commerce" requirement. See Eder v. N. Ariz. Consol. Fire Dist. #1, 2019 U.S. Dist. LEXIS
9  186947, at *7 (D. Ariz. Oct. 29, 2019) (requirement met where plaintiff's position involved
10 oversight of purchasing fire trucks and other equipment across state lines).

**E. California Labor Code Claims**

Orozco argues that "the agreement does not state the contractual provision under which Plaintiff expressly agreed to arbitrate any violations of statutory rights. For an arbitration clause to operate for individual statutory claims, there must be a clear and unmistakable waiver of a judicial forum." Doc. 8, 9:26-10:1. In support, Orozco has cited to cases that found general arbitration language insufficient in collective bargaining agreements. See Hoover v. Am. Income Life Ins. Co., 206 Cal. App. 4th 1193, 1208 (Cal. App. 4th Dist. 2012) ("all disputes, claims, questions, and controversies of any kind or nature arising out of or relating to this contract shall be submitted to binding arbitration"); Vasquez v. Superior Court, 80 Cal. App. 4th 430, 436 (Cal. App. 2nd Dist. 2000) ("Neither disability discrimination, the FEHA, nor the ADA is mentioned in the CBA. Thus, we cannot conclude that the union clearly and unmistakably waived Vasquez's right to a judicial forum for his statutory disability discrimination claim.").

First, the requirement of specificity appears to be limited to the collective bargaining context or if it applies to all employment contracts in general. The logic is that an arbitration clause is normally understood to be limited to the terms of the collective bargaining agreement itself rather than to any additional statutory protections. See Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 78 (1998) ("In collective bargaining agreements, we have said, 'there is a

presumption of arbitrability in the sense that "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" That presumption, however, does not extend beyond the reach of the principal rationale that justifies it, which is that arbitrators are in a better position than courts to interpret the terms of a CBA."). The 2016 Agreement is not part of a collective bargaining agreement.

Second, the arbitration clause in this case is much more specific than the examples Orozco cites, covering:

> any claims by Employee or the Company for: (a) wages, overtime, bonuses, or other compensation; (b) breach of an express or implied contract or covenant; (c) tort claims, including fraud, defamation, wrongful discharge, and intentional/negligent infliction of emotional distress; (d) federal and state statutory or common law claims for unlawful discrimination, retaliation, or harassment including, without limitation, sexual harassment, discrimination or harassment based on race, color, sex, sexual orientation, religion, national origin, ancestry, age, marital status, medical condition, disability, uniformed service, genetic information, or any other unlawful basis (by way of example only, such claims include claims under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964 as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act ('ADA') and ADA Amendments Act of 2008, and the Family Medical Leave Act); (e)claims for benefits (except where the applicable benefit plan has specified a different arbitration procedure than is outlined in this Agreement); and (f) claims for violation of any federal or state constitutional rights, governmental law, statute, regulation, order, ordinance, or provision.

Doc. 1-1, Ex. B. This is an explicit and detailed description of what claims are subject to arbitration. The list includes employment rights under state statute.

**F. Sanctions**

In response to the opportunity to file additional declarations, both parties filed requests to have the other sanctioned or admonished. Gruma argues that Orozco should be sanctioned for her continued objections to Gruma's proffered declarations. Doc. 19. Orozco argues that Orozco should be admonished for making a sanctions motion. Doc. 20. Both requests are denied.

**G. Disposition**

In this case, the whole of Orozco's case is subject to the 2016 Agreement. When all claims

13

are subject to arbitration, courts have the discretion to dismiss the case. See Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir. 1988). It is this court's general preference to dismiss a case instead of issuing a stay when all claims are subject to arbitration. See Carroll v. Dick's Sporting Goods, Inc., 2020 U.S. Dist. LEXIS 167754, *5-*6 (E.D. Cal. Sept. 14, 2020) (explaining rationale for dismissing action instead of issuing a stay when arbitration was ordered through stipulation of the parties).

### IV. Order

Accordingly, it is hereby ORDERED that:

1. Gruma's motion to compel arbitration and dismiss this case is GRANTED. The parties shall submit all claims pending in this matter to arbitration in accordance with the Arbitration Agreement signed December 21, 2016.
2. Gruma's request for sanctions is DENIED.
3. Orozco's request for admonishment is DENIED.
4. The Clerk of the Court shall CLOSE this case.

IT IS SO ORDERED.

Dated:   September 30, 2021

SENIOR DISTRICT JUDGE